# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KEVIN DONAHO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-14-1105-STE |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's applications for disability insurance benefits and supplemental security income under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further administrative development.

I. **PROCEDURAL BACKGROUND**

Plaintiff's applications for disability insurance benefits and supplemental security income were denied initially and on reconsideration. Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 12-24). The

Appeals Council denied Plaintiff's request for review. (TR. 1-3). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II. THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since August 4, 2003, the alleged disability onset date. (TR. 15). At step two, the ALJ determined that Plaintiff had severe impairments of "Reflex Sympathetic Dystrophy/complex regional pain syndrome, status post crushing injury to left hand, 2003 . . . ." (TR. 15). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 19).

At step four, the ALJ found that Plaintiff could not perform his past relevant work. (TR. 22). The ALJ further found Plaintiff had the residual functional capacity (RFC) to:

> [L]ift/carry 20 pounds occasionally and 10 pounds frequently; walk/stand at least 6 of 8 hours with normal breaks; and sit at least 6 of 8 hours. The claimant can do occasional/infrequent reaching, handling, and fingering with left upper extremity.

(TR. 19).

Based on the finding that Mr. Donaho could not perform his past relevant work, the ALJ proceeded to step five. There, he asked a vocational expert (VE) whether any light, unskilled jobs existed that Plaintiff could perform with an additional restriction to non-use of his left upper extremity. (TR. 68, 72). Given the limitations, the VE identified

three jobs from the Dictionary of Occupational Titles (DOT). (TR. 68). The ALJ adopted the testimony of the VE and concluded that Mr. Donaho was not disabled based on his ability to perform the identified jobs. (TR. 22-23).

## III. ISSUES PRESENTED

On appeal, Plaintiff alleges multiple errors at step five involving the ALJ's reliance on the jobs identified by the VE.

## IV. STANDARD OF REVIEW

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

## V. LACK OF SUBSTANTIAL EVIDENCE AT STEP FIVE

Based on the record, The Court cannot determine whether the Plaintiff is able to perform the jobs identified by the VE and ultimately relied on by the ALJ. Due to the ambiguity, the Court finds that the ALJ's step five finding lacks substantial evidence and remand is warranted.

### A. The Inconsistency Between the Hypothetical to the VE and the Written RFC

At the hearing, the ALJ posed a hypothetical to the VE which included a total restriction on the use of the individual's non-dominant upper extremity. (TR. 68, 72, 73). With this limitation, the VE identified three jobs that hypothetical person could perform. (TR. 68). In the written decision, the ALJ referenced the limitation to "no use of the left hand/arm." (TR. 23) But the actual RFC stated that Plaintiff could perform work with "occasional/infrequent reaching, handling and fingering with upper left extremity." (TR. 19). The ALJ ultimately relied on the jobs identified by the VE at the hearing which considered a total restriction on use of the left upper extremity. (TR. 23).

It appears as though an inconsistency exists between the written RFC for "occasional/infrequent reaching, handling and fingering with the upper left extremity" and the hypothetical at the hearing which posed a total restriction on the use of Plaintiff's left hand/arm. But any inconsistency is harmless, as the ALJ relied on jobs which contemplated an even greater limitation than was set forth in the written RFC.

The issues arise, however, regarding the extent of the job base erosion due to Plaintiff's inability to use the left upper extremity and whether the ALJ properly relied on the VE's testimony.

### B. Plaintiff's Ability to Perform Other Work at Step Five

At the hearing, the ALJ asked the VE whether jobs existed which an individual could perform at the light, unskilled level with no ability to use his non-dominant upper extremity. (TR. 68). The VE stated that jobs would be available, but the job base would

be eroded due to the limitation on the upper extremity. (TR. 67-68). The VE then cited three jobs: (1) interviewer, DOT code 205.367-054, with 111,000 jobs available nationally and 655 available jobs in Oklahoma; (2) information clerk, DOT code 237.367-018, with 70,000 jobs nationally available and 820 jobs in Oklahoma; and (3) counter attendant, DOT code 311.477-014, with 8,300 jobs nationally available and 160 available jobs in Oklahoma. (TR. 68). Following the testimony, the ALJ inquired about the specific level of job base erosion. The following ALJ exchange occurred:

> Q: Okay, and then the overall light job based is eroded. What percentage would be - - out of a hundred percent of all the light unskilled jobs, what percentage is left?
>
> A: Your honor, it would just be my opinion, I believe at least 50 percent of the jobs would be eroded, because even on these three I listed, it would be difficult to perform those without some occasional use of both hands.

(TR. 69).

Later, Mr. Donaho's attorney questioned the VE for clarification about the availability of jobs and any possible job base erosion. During the exchange, the VE first confirmed that the jobs of interviewer, information clerk, and counter attendant would exist with the limitations to light, unskilled work with no use of the upper, left extremity. (TR. 73). Next, the VE confirmed that the DOT did not specifically identify jobs which could be performed with the use of only one upper extremity. (TR. 75). As a result, the attorney asked the VE whether "it would be accurate to say we really don't know about how much the occupational job base at light, unskilled work would be eroded" due to employer and/or workstation specific requirements. (TR. 75). The VE replied affirmatively, and further agreed that the total restriction on the upper left

extremity would require an employer to provide an accommodation to the particular workstation or how the work was performed. (TR. 76-77).

With the job erosion, two issues arise: (1) whether the jobs exist in legally "significant numbers" and assuming so, (2) whether the Plaintiff is able to perform the identified jobs. The Court may assume *arguendo* that the jobs identified by the VE do exist in "significant numbers," but the Court is unable to discern whether the Plaintiff is able to perform the identified jobs based on his particular physical limitation.

### 1. Significant Numbers of Jobs

According to Plaintiff, when the job base is eroded by 50 percent, the jobs identified by the VE do not exist in "significant numbers" as required under Tenth Circuit law. (ECF No. 17:5-9). As an initial matter, the Court finds that it is unclear whether the numbers the VE cited were figures before or after the 50 percent erosion. The distinction is significant to Plaintiff's argument, but immaterial to the ultimate outcome. Plaintiff assumes that the identified number of jobs was prior to the 50 percent reduction. After reducing those numbers by 50 percent, Mr. Donaho argues that the resulting amounts do not constitute the requisite "significant numbers." Thus, Plaintiff argues that the ALJ's subsequent reliance on the jobs lacks substantial evidence.

The Court finds the issue immaterial because Mr. Donaho limits his challenge to the number of available jobs in *Oklahoma*. (ECF No. 17:6-8). Plaintiff advocates a multi-factor analysis to determine whether the jobs identified by the VE exist in "significant numbers." Even so, Mr. Donaho ultimately argues that this Court is without authority to

perform the analysis and remand is warranted for administrative consideration of the issue. (ECF No. 17:6-8). According to the Commissioner, the "factor analysis" to which Plaintiff refers is not applicable in the instant case because Plaintiff's argument is limited to a discussion of jobs in *Oklahoma* and not nationwide. (ECF No. 20:8-9). The Defendant is correct, as the Tenth Circuit has held that the Commissioner need only prove that a significant number of jobs exist at the *national* level. *See Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009).

### 2. Ambiguity Regarding Whether Plaintiff Can Perform Other Work

Even assuming that the identified jobs exist in "significant numbers," an impediment exists which prevents the Court from being able to determine whether the Plaintiff is able to actually perform the jobs. The ambiguity requires remand for further analysis.

The VE testified that "at least 50% of the jobs would be eroded, because even on these three I listed, it would be difficult to perform those without some occasional use of both hands." (TR. 69). This testimony could be interpreted two ways: (1) after the erosion, the remaining jobs could be performed with only one extremity, or (2) even with the job erosion, "occasional" use of both hands would be required. The Court adopts the latter interpretation because the VE also testified that the DOT does not list jobs which are specifically limited to the use of one arm; and that the restriction would require a particular workstation accommodation by an individual employer. (TR. 75-76).

At first glance, it would appear that "occasional" use of both hands would be consistent with the RFC as written in the decision. (TR. 19), ("[t]he claimant can do

"occasional/infrequent reaching, handling and fingering with left upper extremity."). However, as discussed, the ALJ's *actual* RFC, which he posed to the VE, limited Mr. Donaho to work which required no use of the left upper extremity. (TR. 23, 68, 72, 73). With this limitation, Plaintiff would be unable to perform jobs, even when eroded, which required "some occasional use of both hands."

Ambiguities exist in: (1) Plaintiff's actual RFC regarding the restriction on his upper left extremity, (2) whether the limitation would allow him to perform other work, (3) the level of job erosion which could result from the limitation, (4) whether the job erosion would eliminate a category of jobs or allow specific jobs tailored to the impairment, and (5) whether the jobs exist in significant numbers. As a result, remand is warranted for clarification of these issues.

**ORDER**

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned magistrate judge **REVERSES** the Commissioner's decision and **REMANDS** the matter for further administrative development.

**ENTERED** on January 29, 2016.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE